## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MINNESOTA

| | |
|---|---|
| BAE Systems Land & Armaments L.P., | Case No. 14-cv-3111 (MJD/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Ibis Tek, LLC, | |
| Defendant. | |

Barbara A. Duncombe and Suzanne Sumner, Taft Stettinius & Hollister LLP, 40 North Main Street, Suite 1700, Dayton, OH 45423; William Charles Wagner, Taft Stettinius & Hollister LLP, One Indiana Square, Suite 3500, Indianapolis, IN 46204; and Mark J. Blando and Jeff Eckland, Eckland & Blando, LLP, 800 Lumber Exchange, 10 South Fifth Street, Minneapolis, MN 55402 (for Plaintiff); and

John G. Horan, Dentons US LLP, 1900 K Street Northwest, Washington, D.C. 20006; Sonia L. Miller-Van Oort, Sapientia Law Group, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402; and Dara D. Mann, Dentons US LLP, 303 Peachtree Street Northeast, Suite 5300, Atlanta, GA 30308 (for Defendant).

## I. INTRODUCTION

This matter comes before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion to Transfer, or Alternatively, to Stay the Proceedings (ECF No. 26). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 31.)

A hearing was held. Jeff H. Eckland of Eckland & Blando LLP appeared on behalf of Plaintiff BAE Systems Land & Armaments L.P. ("BAE"). Sonia L. Miller-Van Oort of Sapientia Law Group and Justin M. Ganderson of McKenna Long & Aldridge LLP[1] appeared on behalf of Defendant Ibis Tek LLC ("Ibis Tek").

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that the Motion to Transfer, or Alternatively, to Stay the Proceedings (ECF No. 26) **BE DENIED**.

## II. BACKGROUND

This is an action for breach of a subcontract between BAE and Ibis Tek. (Am. Compl. ¶¶ 3, 6, ECF No. 9.) Under the subcontract, Ibis Tek was to supply window assemblies and window kits in support of a contract BAE had entered into with the Army. (Am. Compl. ¶¶ 5, 6.) Section H of the subcontract contained "Special Terms and Conditions Applicable to Certain Orders Under Government Contracts" ("Special Terms and Conditions"). (Ex. 2 to Am. Compl. at 2.014, 2.030-.032, ECF No. 9-2.) Among other things, the Special Terms and Conditions addressed cost and pricing data. (*See* Ex. 2 at 2.030-.031.)

The Special Terms and Conditions required Ibis Tek to "prepare and submit cost or pricing data and supporting attachments" as well as "a Certificate of Current Cost or Pricing Data" in accordance with federal acquisition regulations. (Ex. 2 at 2.030-.031; *see* Am. Compl. ¶ 7.) The Special Terms and Conditions also required Ibis Tek

---

[1] The law firm of McKenna Long & Aldridge LLP subsequently changed its name to Dentons US LLP. (ECF No. 55).

> to indemnify and hold [BAE] harmless to the full extent of any loss, damage, or expense, including but not limited to, any price reduction in [BAE's] prime contract with the U.S. Government or subcontract of any tier, resulting from submission, by [Ibis Tek] or its lower-tier subcontractors, of cost or pricing data that were not complete, accurate, and current as certified.

(Ex. 2 at 2.031; *see* Am. Compl. ¶ 8.) "In conjunction with its proposal, Ibis Tek submitted cost or pricing data and signed a Certificate of Current Cost or Pricing Data as of August 16, 2007." (Am. Compl. ¶ 10.)

Subsequently, the Defense Contract Audit Agency ("DCAA") "examined Ibis Tek's cost or pricing data related to initial pricing of the [s]ubcontract." (Am. Compl. ¶ 11.) The DCAA "determined that Ibis Tek overstated material, material handling, labor and overhead, and general and administrative costs as a result of its failure to submit accurate, complete, and current cost or pricing data." (Am. Compl. ¶ 13.) In a separate report, the DCAA "determined that BAE . . . overstated the negotiated subcontract costs as a direct result of Ibis Tek's failure to submit current, accurate, and complete data to the Government." (Am. Compl. ¶ 15.) Ibis Tek challenged the DCAA's findings. (Am. Compl. ¶ 13.)

Ultimately, a revised demand letter was issued to BAE by the Army Contracting Officer for the Prime Contract ("Army Contracting Officer"). (Am. Compl. ¶¶ 16, 17.) "The letter adjusted the principle amount that BAE . . . was indebted to the Government to indicate the correct profit percentage negotiated at the time of the award. The letter also provided details on how BAE . . . was to pay the indebtedness." (Am. Compl. ¶ 17.)

Because Ibis Tek was not in privity with the Army, Ibis Tek was not able to challenge the finding that it had submitted cost or pricing data that was not current, accurate, and complete with the Army Contracting Officer directly. (Am. Compl. ¶ 18.) BAE and Ibis Tek entered into a Sponsorship Agreement "for the purpose of allowing Ibis Tek to challenge" the cost-or-pricing-data finding. (Am. Compl. ¶ 18.) On behalf of Ibis Tek, BAE filed a claim with "the Army Contracting Officer challenging the Government's price adjustment and demand of $2,740,910.27 for the alleged defective pricing." (Am. Compl. ¶ 19.) The Army Contracting Officer denied the claim and the approximately $2.7 million was ultimately recouped by offset against other payments the Government owed to BAE. (Am. Compl. ¶¶ 21, 26.)

In a series of communications, BAE informed Ibis Tek that the claim had been denied and requested that Ibis Tek pay BAE the approximately $2.7 million under the terms of the subcontract. (Am. Compl. ¶ 22.) BAE requested that Ibis Tek advise whether it planned to appeal the Army Contracting Officer's denial and to provide payment plan. (Am. Compl. ¶¶ 24, 27.) Ibis Tek eventually indicated that it planned to appeal the denial with the Armed Services Board of Contract Appeals and proposed a payment plan. (Am. Compl. ¶¶ 28, 31; Mem. in Supp. at 1, ECF No. 27.) Unsatisfied with Ibis Tek's response, BAE filed the instant action for breach of the subcontract. (*See* Am. Compl. ¶¶ 29-39.) Based on a November 18, 2014 opinion by the Armed Services Board of Contract Appeals provided to the Court at the hearing, the appeals process has commenced.

# III. ANALYSIS

Ibis Tek has now moved that this matter be transferred to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a), or in the alternative, stayed until resolution of the appeal before the Armed Services Board of Contract Appeals.

## A. Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "A court faced with a motion to transfer, therefore, must undertake a two-part inquiry. The initial question is whether the action may have been brought in the proposed transferee district. If so, the Court must then consider the convenience and interest of justice factors." *Valspar Corp. v. Kronos Worldwide, Inc.*, No. 13-cv-3214 (RHK/LIB), 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014) (quotation omitted). When considering "a request to transfer venue under § 1404(a)[, a court] is not limited to a determination on the pleadings. A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Dial Tech., LLC v. Bright House Networks, LLC*, No. 13-cv-2995 (MJD/TNL), 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014) (citing cases).

Ibis Tek is a Pennsylvania limited liability company with its principal place of business in Butler, Pennsylvania. (Am. Compl. ¶ 2; Mem. in Supp. at 2, 13.) Butler is located in Butler County, which is in the Western District of Pennsylvania. *See County of Butler Web Map Viewer*, Butler County, http://maps.co.butler.pa.us/ (last accessed July

27, 2015); *Western District of Pennsylvania Area of Service*, U.S. Marshals Service, http://www.usmarshals.gov/district/pa-w/general/area.htm (last accessed July 27, 2015). BAE does not appear to dispute that this action could have been brought in the Western District of Pennsylvania and, as a result, the Court proceeds to whether the relevant factors favor transfer under § 1404(a). *See Klatte v. Buckman, Buckman & Reid, Inc.*, No. 13-cv-3109 (RHK/SER), 995 F. Supp. 2d 951, 955 (D. Minn. 2014).

"[A] transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues." *Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir.), *cert. denied*, 522 U.S. 1029 (1997); *accord Dial Tech.*, 2014 WL 4163124, at *8; *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, No. 08-cv-5838 (MJD/JJG), 598 F. Supp.2d 989, 995 (D. Minn. 2009). The Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider in making the transfer determination, but [has instructed] district courts [to] weigh any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quotations and citation omitted); *accord Toomey v. Dahl*, No. 14-cv-3429 (JNE/TNL), 63 F. Supp. 3d 982, 993 (D. Minn. 2014); *Dial Tech.*, 2014 WL 4163124, at *8; *see Valspar Corp.*, 50 F. Supp. 3d at 1155. "There is no precise mathematical formula to be employed, and a district court enjoys 'much discretion' when deciding whether to grant a motion to transfer." *Valspar Corp.*, 50 F. Supp. 3d at 1155 (quoting *Terra Int'l*, 119 F.3d at 697).

"Courts must be cognizant, however, that transfer motions should not be freely granted." *Id.* (quotation omitted); *accord Dial Tech.*, 2014 WL 4163124, at *9. "[F]ederal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l*, 119 F.3d at 695. "A heavy burden rests with the movant to demonstrate why a case should be transferred. To satisfy that heavy burden, the movant must demonstrate that the relevant factors weigh strongly in its favor." *Klatte*, 995 F. Supp. 2d at 954-55 (quotations and citations omitted); *accord Toomey*, 63 F. Supp. 3d at 993 ("The party seeking transfer must show that the balance of factors strongly favors the movant." (quotation omitted)). "That burden may not be met simply by showing that the factors are evenly balanced or weigh only slightly in favor of transfer." *Datalink Corp. v. Perkins Eastman Architects, P.C.*, No. 13-cv-2978 (SRN/JJG), 33 F. Supp. 3d 1068, 1077 (D. Minn. 2014) (quotation omitted); *accord Toomey*, 63 F. Supp.3d at 993 ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient." (quotation omitted)).

Similarly, "[m]erely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Terra Int'l*, 119 F.3d at 696-97 (quotation omitted). "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that [the] plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, No. 98-cv-2262 (DSD/JSM), 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).

### 1. Convenience of the Parties

Ibis Tek argues that this factor weighs in favor of transfer because "[t]he inconvenience that [it] would experience by litigating this dispute in Minnesota far outweighs the inconvenience that [BAE] may experience if the venue is transferred to the Western District of Pennsylvania." (Mem. in Supp. at 14.) Ibis Tek asserts that litigating in Minnesota will require its two highest level managers to travel to Minnesota, resulting in a "severe[] disrupt[ion]" of operations and productivity because it has no office in Minnesota. (Mem. in Supp. at 14.) Ibis Tek asserts that this burden is "significantly alleviated" if the proceedings are moved to Pennsylvania, and BAE does not face a similar burden because "a division of [BAE]'s parent company has an office" nearby. (Mem. in Supp. at 14.) Ibis Tek also asserts that, by continuing to litigate in Minnesota, it will have to incur travel expenses for witnesses who reside in Pennsylvania, and "[t]he impact of these expenses is exacerbated due to [Ibis Tek] currently operating in a loss position." (Mem. in Supp. at 15.) According to Ibis Tek, "[f]orcing [it] to expend this money (on top of its legal fees for this litigation and the related . . . appeal), further impairs [its] financial health and ability to defend itself against [BAE's] breach claim." (Pl.'s Mem. in Supp. at 15.)

BAE responds that its potential witnesses reside here in Minnesota and transfer to the Western District of Pennsylvania would force its personnel to travel. (Mem. in Opp'n at 6, ECF No. 36.) BAE asserts that Ibis Tek's "request to transfer constitutes nothing more than a request to shift inconvenience from [Ibis Tek] to [BAE], which is improper." (Mem. in Opp'n at 6.)

This case presents the rather classic scenario that it is more convenient for each party to litigate in its home forum rather than the home forum of the other party. *See Datalink Corp.*, 33 F. Supp. 3d at 1077-78 ("Just as it would be inconvenient for Perkins Eastman to bring its records and party witnesses to Minnesota, so it would be equally inconvenient for Datalink to bring the same to the Southern District of New York."); *Clergy Fin.*, 598 F. Supp. 2d at 995 ("Defendant argues that it would be more convenient for it to try its case in Colorado because all of its witnesses and evidence are located in Colorado. As Plaintiff points out, however, it is more convenient for Plaintiff to try its case in Minnesota because all of its witnesses and evidence are located in Minnesota."). Ibis Tek is correct that "[i]n evaluating the convenience of the parties, courts may consider the location of the two courthouses and the travel expenses that the parties 'would likely incur . . . for airfare, meals and lodging, and losses in productivity from time spent away from work.'" *Oien v. Thompson*, 824 F. Supp. 2d 898, 903 (D. Minn. 2010) (alteration in original) (quoting *In re Apple*, 602 F.3d at 913); *see Dial Tech.*, 2014 WL 4163124, at *9. But, given that each party anticipates needing to incur travel expenses and associated costs with witnesses and evidence no matter where this matter is venued, the fact of such expenses is essentially neutral. *Dial Tech.*, 2014 WL 4163124, at *10.

A court may consider a party's ability to bear such expenses, i.e., a substantiated claim of financial hardship, in weighing this factor. *Toomey*, 63 F. Supp. 3d at 993; *Dial Tech.*, 2014 WL 4163124, at *10. In support of its claim of financial hardship, Ibis Tek

has submitted a declaration from Harry Kramer, its Chief Financial Officer. (Decl. of Harry Kramer, ECF No. 28.) Kramer states:

> Ibis Tek has operated at a loss during Fiscal Year 2013 and Fiscal Year 2014. During Fiscal Year 2013, Ibis Tek's sales decreased from approximately $62 million in 2012 to approximately $42 million in 2013, resulting in a loss of approximately $ 4 million in Fiscal Year 2013. As of August 31, 2014[,] Ibis Tek currently has produced approximately $23 million in revenue for Fiscal Year 2014. As of August 31, 2014[,] Ibis Tek showed a loss of approximately $200,000 for Fiscal Year 2014. The 2014 valuations are based on Ibis Tek's most current and complete financial statements.

(Kramer Decl. ¶ 8.) The Court concludes that, while Ibis Tek is not a model of robust financial health, its sales have historically been tens of millions of dollars, and it has not "'present[ed] convincing evidence that its financial position makes it incapable of litigating in [Minnesota]'" and "that litigating this matter in [Minnesota] is cost-prohibitive." *Dial Tech.*, 2014 WL 4163124, at *10 (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 639 (E.D. Va. 2003)). Accordingly, the Court finds that this factor is neutral.

### 2. Convenience of Witnesses

"The convenience of the witnesses is an important factor because it determines the relative ease of access to sources of proof." *Toomey*, 63 F. Supp. 3d at 993 (quotation omitted); *see Dial Tech.*, 2014 WL 4163124, at *11 (convenience of witnesses generally the most important factor). "In analyzing this factor, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine

their accessibility and convenience to the forum." *Klatte*, 995 F. Supp. 2d at 955 (citation and quotation omitted); *accord Dial Tech.*, 2014 WL 4163124, at *11.

"The focus is on non-party witnesses since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Klatte*, 995 F. Supp. 2d at 955 (quotation omitted). Non-party witnesses outside the Court's subpoena power are "an important consideration[]as a [party] should generally not be forced to conduct its case by deposition." *Datalink Corp.*, 33 F. Supp. 3d at 1078 (quotation omitted); *see Toomey*, 63 F. Supp. 3d at 993 (noting the court's preference for "live testimony"). "The party seeking transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Oien*, 824 F. Supp. 2d at 904 (quotation omitted); *accord Toomey*, 63 F. Supp. 3d at 993.

Ibis Tek asserts that it plans to rely on "non-party witnesses located in or near Pittsburgh,[Pennsylvania]." (Mem. in Supp. at 17.) Ibis Tek identifies Mike Seminatore, its former Controller, and Jeff Campbell, its former Vice President of Marketing, as its non-party witnesses. (Mem. in Supp. at 10, 17; Kramer Decl. ¶¶ 9(d), (e).) Both of them are "believed" to reside in or around Butler, Pennsylvania. (Mem. in Supp. at 10; *accord* Kramer Decl. ¶¶ 9(d), (e).) Ibis Tek asserts that both "Seminatore and Campbell interacted with [BAE], and should help demonstrate why [Ibis Tek[2]] did not submit

---

[2] It appears that there might be a typographical error in this sentence as written in Ibis Tek's brief. The original sentence reads: "Both Messrs. Seminatore and Campbell interacted with Plaintiff, and should help demonstrate why *Plaintiff* did not submit defective cost or pricing data—that the information provided to Plaintiff was necessarily based on an incomplete product design and limited by the company's capability to provide reliable financial information." (Mem. in Supp. at 17 (emphasis added) (citation omitted).)

defective cost or pricing data—that the information provided to [BAE] was necessarily based on an incomplete product design and limited by the company's capability to provide reliable financial information." (Mem. in Supp. at 17 (citation omitted).) The Kramer Declaration similarly states that both Seminatore and Campbell "directly interacted with BAE regarding the matters discussed in paragraph 9 of this declaration." (Kramer Decl. ¶¶ 9 (d), (e)." Paragraph 9 of the Kramer Declaration provides a generic reference to "information regarding the [Government's] defective pricing claim . . . that is currently being litigated before the Armed Services Board of Contract Appeals, and the claims being disputed in this litigation." (Kramer Decl. ¶ 9.) Notably, Ibis Tek states, without any greater specificity, that each of its non-party *and party witnesses* "directly interacted with BAE regarding the matters discussed in paragraph 9 of this declaration." (Kramer Decl. ¶¶ 9(a), (b), (c), (d), (e); *accord* Mem. in Supp. at 9-10.)

Ibis Tek also intends to call the DCAA auditors whose examination determined that Ibis Tek had failed to submit accurate, complete, and current cost or pricing data. (Mem. in Supp. at 18.) Ibis Tek asserts that BAE "is relying in part, on the Audit Report to prove that [Ibis Tek] submitted defective cost or pricing data," and, "[t]hrough testimony, [Ibis Tek] will demonstrate how the Audit Report is flawed—thereby undercutting a necessary predicate to [BAE's] breach theory." (Mem. in Supp. at 18.) These auditors are located in the Pittsburgh, Pennsylvania area. (Mem. in Supp. at 18; *accord* Kramer Decl. ¶ 10.)

Ibis Tek states that it is unknown whether Seminatore or Campbell are willing to travel to Minnesota to participate in this litigation. (Kramer Decl. ¶ 11.) Ibis Tek states

that "the DCAA auditors are not likely to be willing to travel to Minnesota given that they are adverse to [the parties] in the related appeal." (Mem in Supp. at 18.)

BAE "concedes that certain witnesses outside the District of Minnesota may become potentially relevant over the course of this litigation." (Mem. in Opp'n at 8.) Nevertheless, BAE contends that the lack of specificity concerning the residences of Seminatore and Campbell is "telling" because "such information easily should be ascertainable from witnesses willing to testify," and "Ibis Tek's unconfirmed 'belief' regarding these witnesses is a slender reed on which to base a motion to transfer venue away from [BAE's] chosen forum." (Mem. in Opp'n at 7.)

BAE also takes issue with the proposed DCAA auditor testimony. (Mem. in Opp'n at 7-8.) BAE points out that, because the DCAA auditors are Department of Defense personnel, special permission would need to be obtained before the auditors could testify.[3] (Mem. in Opp'n at 7.) *See* 32 C.F.R. § 97.6 (procedures regarding release of official information in litigation and testimony by Department of Defense personnel as witnesses). At the hearing, the parties disagreed on the odds of such a request being granted. Ibis Tek asserted that there is a "chance" of the request being granted and a "better chance" if the litigation is in Pennsylvania. BAE, on the other hand, asserted that it is "not likely" the DCAA auditors will be permitted to testify.

BAE further asserts that the DCAA auditors are unnecessary as

---

[3] BAE also points out that the DCAA auditors cannot provide "opinion or expert testimony concerning official [Department of Defense] information, subjects, or activities, except on behalf of the United States or a party represented by the Department of Justice" absent certain circumstances. 32 C.F.R. § 97.6(e). (Mem. in Opp'n at 7-8.) At the hearing, Ibis Tek stated that it would not be eliciting expert or opinion testimony from the DCAA auditors, just factual testimony.

> the indemnification clause under which BAE . . . brings suit
> does not depend on any interpretation of government contract
> law or the findings of the DCAA.  Ibis Tek agreed to assume
> "entire responsibility and liability" for any "loss or legal
> damage" "in any manner connected with the services or work
> performed or goods supplied" by it.

(Mem. in Opp'n at 8.)

As noted above, the possession of material and important testimony by a non-party witness outside of the Court's subpoena is an important consideration.  *Datalink Corp.*, 33 F. Supp. 3d at 1078.  Ibis Tek has not, however, met its burden to show that the testimony of Seminatore and Campbell is material and important, or that it is not cumulative of other party witnesses' testimony in this case.  Ibis Tek has not even identified what Seminatore and Campbell's testimony will entail.  Ibis Tek has done nothing more than generically assert that all of its witnesses, party and non-party alike, "directly interacted with [BAE] regarding the matters underlying this litigation."  (Mem. in Supp. at 10; *accord* Kramer Decl. ¶¶ 9(a), (b), (c), (d), (e).)

With respect to the DCAA auditors, this Court "is hesitant to place too much weight on the prospect of [their] absence" without knowing whether they would even be permitted to participate in this matter, especially considering the odds would appear to be against it.  *Datalink Corp.*, 33 F. Supp. 3d at 1078.  Further, there is some credence to BAE's argument that interpretation of the subcontract's indemnity provisions is not dependent upon the findings of the DCAA.[4]

---

[4] At the hearing, there was some argument that BAE appeared to now be relying on a different, broader indemnity provision of the subcontract than those provisions identified in the Amended Complaint.  (*Compare* Am. Compl. ¶¶ 7, 8 *with* Mem. in Opp'n at 4.)  The sufficiency of the pleadings is not before the Court and the Court takes no

At the same time, BAE identified only one potential non-party witness at the hearing and has conceded "that certain witnesses outside the District of Minnesota may become potentially relevant over the course of this litigation." (Mem. in Opp'n at 8.) There are likely to be challenges with subpoena power no matter the jurisdiction. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."); *Dial Tech.*, 2014 WL 4163124, at *13. Therefore, "the Court concludes that, at most, the convenience of the witnesses factor weighs only slightly in favor of [Ibis Tek]—and slight is insufficient as a basis for transfer." *Datalink Corp.*, 33 F. Supp. 3d at 1078 (quotation omitted).

### 3. Interests of Justice

In evaluating the interests-of-justice factor,

> courts consider (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law.

*Klatte*, 995 F. Supp. 2d at 957; *accord Dial Tech.*, 2014 WL 4163124, at *13. Based on these considerations, this factor is essentially a wash.

There is a general presumption in favor of BAE's choice of forum as the plaintiff, particularly given that BAE's principal place of business is located in Minnesota, which weighs against transfer. (Am. Compl. ¶ 1; Mem. in Opp'n at 9). *Datalink Corp.*, 33 F.

---

position on whether indemnity provisions other than those expressly identified in the Amended Complaint are available to BAE.

Supp. 3d at 1077 ("The presumption is in favor of the plaintiff's choice of forum, especially where the plaintiff resides in the district in which the lawsuit was filed."); *accord Oien*, 824 F. Supp. 2d at 905; *see Dial Tech.*, 2014 WL 4163124, at *8.

The comparative-costs, obstacles-to-a-fair-trial, conflict-of-law, and interpretation-of-local-law considerations are neutral. The Court has already rejected Ibis Tek's argument that its financial position makes it incapable of litigating in Minnesota and transfer to the Western District of Pennsylvania would simply shift those costs to BAE, not result in a cost savings. *See Terra Int'l*, 119 F.3d at 696-97. Likewise, Ibis Tek asserts that the potential need to compel non-party witnesses presents an obstacle to a fair trial if this matter remains in the District of Minnesota. (Mem. in Supp. at 20.) But, as stated above, there are likely to be challenges of subpoena power whether this matter remains in this District or is transferred to the Western District of Pennsylvania, and Ibis Tek has not marshaled a showing that the convenience-of-the-witnesses factor weighs strongly in its favor. Further, the parties agree that the federal law of government contracts and Minnesota law govern this dispute, although there appears to be disagreement as to which applies to the indemnity provisions. (*Compare* Mem. in Supp. at 20-21 *with* Mem. in Opp'n at 11.) "In any event, . . . federal district courts are faced almost daily with the task of applying some state's law other than their own, and they are capable of resolving disputes under another state's law." *Klatte*, 995 F. Supp. 2d at 957 (quotation omitted); *accord Datalink Corp.*, 33 F. Supp. 3d at 1078; *Clergy Fin.*, 598 F. Supp. 2d at 995.

The remaining two considerations, judicial economy and ability to enforce a judgment, weigh slightly in favor of transfer. The parties blend these two factors together. (*See* Mem. in Supp. at 21-22; Mem. in Opp'n at 10.) Ibis Tek asserts that it only has assets in Pennsylvania and any judgment obtained in this District would have to subsequently be enforced in Pennsylvania. (Mem. in Supp. at 21-22.) BAE responds that "[a] transfer of venue is far more disruptive and costly to judicial economy than a proceeding to enforce this Court's judgment by a writ of execution." (Mem. in Opp'n at 10.) The lack of assets by a defendant in Minnesota has weighed in favor of transfer. *Valspar Corp.*, 50 F. Supp. 3d at 1157 ("Continued litigation in Minnesota, therefore, would result in the prospect of piecemeal litigation: the instant lawsuit, followed by litigation to enforce any resultant judgment in Texas, Kronos's home state."); *Klatte*, 995 F. Supp. 2d at 957 (same); *see Dial Tech.*, 2014 WL 4163124, at *13; *but see Oien*, 824 F. Supp. 2d at 906 ("If there is some risk to plaintiffs that they will not be able to enforce a judgment in [their] favor, that is a risk they have elected to take. The interest of justice does not support transfer based on this factor.").

Therefore, given that one of the interests-of-justice considerations weighs against transfer, two weigh slightly in favor of transfer, and the remainder are neutral, the Court concludes that, on balance, the interests-of-justice factor is also neutral.

### 4. Conclusion

In sum, at best, Ibis Tek has only shown that the convenience-of-the-witnesses factor weighs slightly in its favor. The remaining two factors, convenience of the parties and interests of justice, are essentially neutral. This is not enough. *See Toomey*, 63 F.

Supp. 3d at 993; *Datalink Corp.*, 33 F. Supp. 3d at 1077. Ibis Tek has not met its burden to show that, based on the relevant factors and considerations, transfer is strongly favored under the circumstances. Accordingly, the Court recommends that Ibis Tek's request to transfer this matter to the Western District of Pennsylvania be denied.

### B. Stay

Should the Court deny Ibis Tek's request that this matter be transferred, Ibis Tek alternatively requests that this matter be stayed pending resolution of the appeal before the Armed Services Board of Contract Appeals.[5] (Mem. in Supp. at 24-26.)

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006); *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990) (per curiam). "While the Court's inherent power to manage its docket places this decision within the Court's broad discretion, '[t]he proponent of the stay bears the burden of establishing its need.'" *KK Motors, Inc. v. Brunswick Corp.*, No. 98-cv-2307 (JRT/RLE), 1999 WL 246808, at *2 (D. Minn. Feb. 23, 1999) (alteration in original) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)); *accord Stratasys, Inc. v. Microboards Tech., LLC*, No. 13-cv-3228 (DWF/TNL), 2015 WL 168344, at *1 (D. Minn. Apr. 10, 2015) ("The burden of establishing that a stay is appropriate is with the

<hr>

[5] At first blush, Ibis Tek's request for a stay in the alternative rather than in the first instance would seem to undercut all of its arguments that such a stay is warranted. Ibis Tek states, however, that "[i]f this Court transfers the venue to the Western District of Pennsylvania, [Ibis Tek] will immediately move that Court to stay the proceedings for the same reasons discussed herein." (Mem. in Supp. at 22 n.6.)

party seeking the stay.").  "Because a stay of proceedings has the potential to damage the party opposing it, the decision to stay should weigh the 'competing interests and maintain an even balance,' recognizing that the Supreme Court has counseled moderation in use." *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-md-2090 (ADM/AJB), 2013 WL 6533154, at *1 (D. Minn. Dec. 13, 2013) (quoting *Landis*, 299 U.S. at 255); *accord KK Motors*, 1999 WL 246808, at *2 ("Although we have not been hesitant to stay proceedings upon a proper showing of cause, a stay is the exception and not the rule.").

Ibis Tek argues that the Armed Services Board of Contract Appeals and this matter involve the same underlying issues as, "[i]n order to prevail in these proceedings, [BAE] must demonstrate (i) that [Ibis Tek] submitted defective cost or pricing data, and (i[i]) as a result, the [Government] withheld or offset certain payments otherwise due [BAE]."  (Mem. in Supp. at 24.)  Ibis Tek also argues that it should not have to litigate on two fronts given its financial position, and that if Ibis Tek (and consequently BAE) prevails before the Armed Services Board of Contract Appeals, this matter is moot. (Mem. in Supp. at 24-26.)  Ibis Tek argues that the only harm to BAE is delayed recovery of the alleged damages.  (Mem. in Supp. at 25.)

BAE counters that the issues in this matter and those before the Armed Services Board of Contract Appeals are "completely separate."  (Mem. in Opp'n at 12.)  BAE asserts that the appeal involves "whether Ibis Tek's cost or pricing data were, in fact, defective," and this matter concerns "whether the [s]ubcontract requires Ibis Tek to indemnify BAE . . . for the amount it already has been charged due to Ibis Tek's cost or

pricing data submission," citing a separate provision of the subcontract.[6]  BAE asserts that it would be inequitable to force BAE to bear Ibis Tek's debt while the appeal is pending,[7] which is apparently a lengthy process.[8]

Again, as stated above, the Court has already rejected Ibis Tek's contention of financial hardship.  Further, while it cannot be denied that the appeal and this matter are certainly related and will likely have some overlapping issues, the Court does not agree with Ibis Tek that the issues are identical.  At the hearing, Ibis Tek itself agreed that one potential outcome of this litigation is that Ibis Tek has to indemnify BAE no matter how the appeal comes out.[9]  Similarly, Ibis Tek also stated that it was not entirely sure that Ibis Tek would be liable under the subcontract even if the appeal were unsuccessful.  Moreover, BAE should not be forced to "bank" the approximately $2.7 million for an indefinite period of time.  "The party requesting a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'"  *United States v. Minnkota Power Co-op, Inc.*, 831 F. Supp. 2d 1109, 1118 (D.N.D. 2011) (quoting *Landis*, 299 U.S. at 255).  Ibis Tek has not made a sufficient showing here.  *See id.*; *see also Stratasys*, 2015 WL 1608344, at *2; *KK Motors*, 1999 WL 246808, at *2.

---

[6] *See supra* n.4.

[7] BAE asserts that Ibis Tek could have requested deferment from the Government while the appeal was pending and BAE encouraged Ibis Tek to do so.  (Mem. in Opp'n at 12-13.)  At the hearing, Ibis Tek stated that it was not able to request a deferral because it was not in privity with the Government, and, given that BAE is not a small business concern or claiming financial hardship, such a deferral would not likely have been granted.  *See generally* 48 C.F.R. § 32.607-2 (deferment of collection).

[8] At the hearing, Ibis Tek indicated that some cases have been resolved in two years or less whereas BAE's counsel indicated that, in his experience, appeals can take two years or more, (*see* Mem. in Opp'n at 13-14).

[9] *See supra* n.4.

# IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that the Motion to Transfer, or Alternatively, to Stay the Proceedings (ECF No. 26) **BE DENIED**.

Dated: July___30___, 2015

_____s/ Tony N. Leung_____
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*BAE Systems Land & Armaments L.P. v. Ibis Tek, LLC*
Case No. 14-cv-3111 (MJD/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.